at all. Mr. Yoke for the appellate. Mr. Scarborough for the appellate. Good morning, your honors. My name is Faisal Gill and I am the counsel for the appellate. Kaiser Gill. Your honor, it is simply not the case that all security clearance cases are immune from judicial review. Those are not my words. Those are the words of this court in National Federation of Federal Employees versus Greenberg. This case is not about second guessing the decision of the executive. This case is about whether the FBI and Department of Justice violated special agent Kaiser Gill's constitutional rights in making that decision. We are not here if this case was about the merits. We would be before this court asking this court to determine whether special agent Gill's actions justified revocation of security clearance. That is not what we are asking here. And we do not believe that Egan prevents. Did you consider the McElroy case? I'm sorry, your honor. Did you consider the McElroy case? I'm sure we did, your honor. I don't recall that case at this particular time. Well, it seemed to me quite relevant. It's a Supreme Court case holding five to four in an opinion by Justice Stewart that the decision to bar a cook at a restaurant on the Naval Yard or in Washington was legitimate because the determination that she had, she could not have a security clearance was not reviewable. Your honor, there has been a lot of cases where security clearance are not reviewable. The difference is whether there is a liberty interest at stake here. No, that was due process was exactly the argument in McElroy. That was a liberty interest at stake. That was the argument. Again, your honor, in Webster v. Doe and other cases, this court has spoken in Carceva, in other cases the liberty interest, if there is a liberty interest at stake and if we're able to show that there is a liberty interest at stake. In McElroy, Justice Brennan wrote a very strong dissent. If you read the dissent and the Stewart opinion together, you reach the conclusion that if the government specifically stated that someone is denied a security clearance because he or she is a Muslim, let us say, or a Catholic, there might be an equal protection claim, but you cannot inquire beyond that. In other words, other than a facial claim that's based on a statement that could raise a constitutional question, you can't go into the denial of the security clearance. Your honor, this court has reviewed exactly such decisions in Carceva. This court has reviewed such decisions in Doe v. Cheney, in Ranger v. Tennant. In all those cases, there were security clearance issues, denials issued, and the court actually went and did the analysis of whether there was a liberty interest at stake. And in determining Doe v. Cheney as they set off the — But if you follow the McElroy case, which of course is a Supreme Court case — Yes, your honor. It's only a facial — you can only raise such a thing if there's a — if the statement is made that you're denied a security clearance and therefore you can't have a job because you're a Muslim or because you're a Catholic. But you can't go beyond that. Again, your honor, I would argue that this court has done exactly that. In Carceva, the court remanded the case back to the district court for further proceedings to look to see whether — What was the — remind me what the facts were in that case. Your honor, in Carceva, there was a Russian translator working at the Department of State whose security clearance was revoked, and the court did an analysis of whether there was a liberty interest at stake. What was the claim in the case? There was a due process, your honor. What were the facts? What were the claims? It was a — your honor, it was a Russian translator — No, no. What was the claim? What was the reason given? Was there a statement made by the State Department? There was not a statement made by the State Department, your honor. There was a statement made that this — believed that she had failed some — failed to disclose something on her security clearance application. And then as they were reviewing that, they had stated that they were going to remove her from the — from a particular contract in the State Department. And this court wanted to do an analysis to see if it was just being removed from this particular contract, whether they were being removed from the Department of State, or whether she was being precluded from the — working as a Russian translator in the — as a — Was there a denial of security clearance? That was the case, a denial of security clearance? A revocation of security clearance, your honor. I'm sorry. Mr. Gill. Yes, your honor. I'm curious. The government says in its brief that we don't even have to address the question of whether there's a liberty interest here. Because under our case law, your client got all the process that was due before the ARC got a hearing. And they cite our case in Cheney, which is exactly what we did there. And you never — this is at page — this is at page 35 of the government's brief. So you had a full hearing before the ARC. So even if there was a liberty interest, you know, your client got all the process that was due. And you didn't respond to that. Would you like to now? Yes, your honor. I believe we did. We were arguing that the hearing — Did what? You did respond? I believe so, your honor. We responded by stating that the hearing before the ERC was not a full and fair hearing because of the FISA violation. No, that can't be right because, as the district court pointed out, the revocation of a security clearance did not turn on any evidence obtained from FISA. It turned only on evidence obtained during an interview where Mr. Gill conceded that he had improperly accessed FBI files. So that can't possibly be a basis for — Your honor, we respectfully disagree with the district court's determination. Why? Right after the ARC, it was a six-year wait between — Can we — am I right about ARC? Before ARC, Mr. Gill conceded that he had improperly accessed FBI files. He conceded it was wrong, and he basically threw himself on the mercy of the panel, right? That was it. And the panel said — correct me if I'm wrong. The ARC said discipline removed his security clearance because of the improper access of FBI files, information it learned from Mr. Gill. Correct? Correct, Your Honor. Okay. So the FISA warrant isn't relevant to whether or not there was a fair hearing before the ARC. Correct? Again, Your Honor, I would respectfully disagree in the sense that the — if this case is allowed to continue on, and if we are allowed to get to the discovery phase, we will be able to demonstrate that there are other agents similarly situated as Special Agent Gill who have accessed those same files, those same records, who have not had their security clearance revoked, who have not been terminated. The reason we believe that we did not — Well, go ahead. Finish, and then I'll — Your Honor, the reason we believe that we did not get a full hearing before the ARC is because we do believe the ARC considered information gained from a FISA wiretap without notifying Special Agent Gill that they were going to consider that. You've made two points here. Let me go back to your first one. Yes, Your Honor. Let me go back to your first one. That is your argument that the FBI treated non-Muslims who improperly accessed FBI files differently from Muslims, right? Correct, Your Honor. So I looked pretty carefully in the record, and I couldn't find it. But as far as I can tell, that argument was not made before the ARC. Am I right about that, or did you make that argument before the ARC? Your Honor, that argument was made before the ARC. Point to something in the record that tells me that. I couldn't find it. It's in our complaint. Well, your complaint alleges that that happened. Your complaint alleges that the FBI treats Muslims and non-Muslims differently with respect to accessing FBI files. That's in your complaint. But my question was, did you make that argument before the ARC? In other words, did you say to the ARC, look, one of the reasons you can't punish him is because the FBI doesn't treat non-Muslims this way, doesn't punish them this way, doesn't take away their security clearances. And I need to know, I could not find that argument. The only argument I could find in the record that Mr. Gill made before the ARC was basically a plea for mercy, that don't take away my security clearance. He didn't say don't take away my security clearance because you haven't taken away from non-Muslims. At least I couldn't find that in the record. Your Honor, we did make that argument before. Can you point to something in the record which is that? Your Honor, I believe it's in my brief, initial brief with the Department of Justice in response, motion of opposition. Wait, your what? Into what? To their motion to dismiss in the district court. So can you? I'm not asking you a question about the district court. He's asking you a question about the administrative procedure before. No, and we did make it before the ARC, Your Honor. We presented a memo. Perhaps Judge Tatel asked you for a reference in the record to where you made that argument before the ARC. So you're saying you had a memorandum that you submitted to the ARC? Yes, Your Honor. And can we find that in the record? We did not attach that memorandum to the district court briefs or to our initial complaint. All right. So before the ARC, did you make the argument that you make in count two of your complaint that because you did not have notice, you were unable to present a full defense to the evidence when you appeared before the ARC? Your Honor, we couldn't make that argument because we did not know the ARC was considering wiretaps from a FISA warrant at that time. We only found out subsequent to that when the ARC and the chairperson of the ARC requested a memorandum from OLC asking whether FISA and warrants applied to the ARC or whether Section 106 FISA applied to the ARC or if it was just judicial proceedings. And OLC opined that it did apply to ARC and people before the ARC. If the government is going to use evidence gained from an NSA wiretap, FISA wiretap, then they have to notify. The reason we believe that that's so important is because one of the issues before the ARC and one of the reasons for his revocation is because he was accessing these files for his family members. One of his family members. Based on his own admission? Correct, Your Honor. And I just need, Judge Tatel was pursuing that with you earlier. Your Honor, we're not disputing that Special Agent Kiel, we have never disputed at all at the ARC or at any briefing stage that Special Agent Kiel accessed those files. He was, he made a bad judgment in accessing those records. Well, why is the FISA relevant at all? If the information that came from FISA is the information that he concedes, I don't get it. Your Honor, the information from FISA is that one of the members of his family, me, was under a NSA warrant at the time. Having that information, having, knowing that a family member, his brother, is under a FISA warrant, we believe is significant information. And we do believe that that affected the ARC's decision. That's why the ARC sought an opinion afterwards. Had Special Agent Kiel known of that fact, Special Agent Kiel's defense would have been tailored to address that issue. I still don't understand. If he conceded the very fact that came from, allegedly, the FISA warrant, why is it relevant? Well, he didn't concede the very fact, Your Honor. The fact, he conceded that he had improper access to the files of the family. But if that was the only issue, Your Honor, his security clearance would not have been revoked. As we stated before the ARC, as I believe I stated in my motion, there are other agents who access similar records, who access the FBI's file system for family members who were not, who didn't have their security clearance revoked, who were not terminated from the FBI. We believe Special Agent Kiel was terminated and revoked because he is Muslim and because it certainly adds another issue for him to address if one of his family members is under an active FISA warrant. And that is, I think, the exact reason why Section 106 of the Act exists. If the government is going to use that evidence, because it is highly prejudicial, it should at least notify the person that they're using it against that that is evidence that we're going to use. Otherwise, there would be no reason for Congress to put that section in there and government would not have to notify the person that they're planning to use evidence gained from that. We don't know what evidence was gained from that. We don't know what FISA considered. What we do know is that they, after the ARC, if that evidence was not important, the ARC would not have sought an opinion from OLC to see if they needed to notify Special Agent Kiel or not if that was not relevant information for them as they're making their decision. Because they sought the opinion, we do believe that that was information that was important, and we do believe that had he known about it, he would have squarely addressed that issue of being under a wiretap. It is a prejudicial issue, and certainly if you're deciding whether foreign influence is at play and one of your family members is under a NSA warrant, that is something that an ARC absolutely would consider. And without him knowing that they're considering that, that left him at a severe disadvantage in mounting an effective defense. That is why we believe the ARC procedure, ARC process was not meaningful. Thank you. All right, shall we hear? The government. May it please the Court, Charles Scarborough for the Department of Justice. I'm standing in for my colleague, Janie Lilly, who had a medical emergency yesterday morning. Yes, we appreciate that. So I'll do my best. Could you raise that podium a little, because you're too tall for the? Okay, sure. Well, you can raise it, can't you? Doesn't the whole? I want you to raise the entire thing. Oh, the whole thing. Oh, where is that button? You'd think I would know. Oh, it doesn't work in here. It doesn't work in here. Oh, it's a long courtroom. Sorry. I'll do the best I can. You're just too tall. Can you help us with this point about what was argued before the ARC? Yeah. I'm not aware of anything in the record that shows what was argued. Again, this was decided at a very preliminary stage, so we're working off basically the complaint and what was attached to the complaint, which includes the ARC's decision. And I want to focus on the ARC's decision because. I want to just be clear. Does the government read the complaint to raise a procedural due process issue as distinct from some aspects of the brief that suggest you're just dealing with it as a substantive due process claim because you argue that necessarily it goes to the merits of whether the security clearance should have been revoked or not? I think that is the gist of our argument, Your Honor, is that these due process claims and the constitutional claims in general are their repackaged statutory. I'm not sure it's a substantive due process. I think it's an equal protection claim. Well, the equal protection claim is where it's a good place to start because the equal It's a claim of discrimination based on national origin, religion, those sorts of things. And the district court said there are a lot of reasons why that claim was barred. One is that under GSA v. Brown, you know, Title VII is the exclusive remedy for that sort of a claim. How can it be an exclusive remedy if you can't bring it? God, I can't hear. How can Title VII be an exclusive remedy if you can't bring a Title VII case? Egan says you can't bring a Title VII case, so how can that be the exclusive remedy? But I don't think And all of our cases, all of our cases on this are statutory cases, and many of them, many of them say, you know, constitutional claims are different. But I don't think the upshot of that is that because your statutory claim that you would normally bring under Title VII is barred by Egan, that you get to reconfigure and repackage it as a constitutional claim. The court in the Tenth Circuit in the Hill case addressed this type of situation. She says if Egan could be bypassed by simply invoking constitutional rights, it's hardly worth the effort. And that's the sort of the fundamental point throughout this, is that simply repackaging the claims as constitutional claims and then asserting basically attacking the merits and the process by which the FBI, you know, undertook the security clearance review here and the, you know, the evidence it considered Suppose the FBI revoked all security clearances for Muslim or, say, African-American agents. Could they not bring a constitutional challenge to that? Well, Your Honor, I think that what your hypothetical raises is the exception that this Court has clearly recognized for challenges to policies, constitutional challenges to policies. In the Greenberg case, when we're not knowing what the Greenberg case is. Suppose it's a written policy. Suppose it's just a practice. I think you would have a Suppose they just routinely revoke them individually. Suppose someone an agent whose security clearance is revoked alleges in his complaint that he's that this is part of a pattern of revoking security clearances for African-Americans. That's what he's alleging here. He's alleging here in his complaint that the FBI treats Muslim special agents differently from non-Muslim agents. That's exactly what he's alleging. He's alleging that, and I think it's useful, as Your Honor started to do. But stick with my hypothetical. Why isn't that? And you just conceded that you could bring such a case. I conceded that we're not quarreling with the Greenberg proposition that you can bring a constitutional claim to challenge a procedure. I think there is a distinction in the type of constitutional claim that goes and attacks the merits of an individualized security clearance determination. That is what's going on here. I want to start going back to the ---- No, no, no. His allegation is that non-Muslims are treated as a class or treated differently. I think ---- That non-Muslims who commit this offense are not, do not lose their security clearance. With respect, Your Honor, I think that his allegation is about his treatment as a Muslim, that he was ---- he was disciplined more harshly than other people. And again ---- The non-Muslims. That's correct. The non-Muslims. But again, this is all about his security clearance and individualized determination. But that's true of any ---- that's true of any allegation that a class of people is treated differently on the basis of race. Of course it relates to his case. Otherwise, he wouldn't have standing to bring it. Right? What gives him standing to bring it is that he himself lost his security clearance. So clearly it's about him. But his allegation is broader. His allegation is that non-Muslims are treated differently for this kind of offense. And I ---- it's just ---- I don't understand. I don't know of any case that says he couldn't bring that challenge. Is your position that he did not make a complaint that Muslims are treated categorically unfairly by the FBI on security clearances? Yes, Your Honor. And I think that the ---- In other words, you're saying if he made that allegation in the complaint, it would be a different case? It would certainly be a different case, but I'm ---- Would it be a case that he have a ---- would he have a right to proceed in that situation? Well, again, if ---- Had evidence that there was the FBI ---- instead of evidence that non-Muslims were treated better than he was, if he had an allegation across the board Muslims were discriminated against by the FBI in security clearances, would you say at that point he had a right to proceed? I think it would be a different case and ---- No, no, I know it's a different case. That's what hypotheticals are for. The ---- I want to know what your answer to the different case. What I would say is that the answer to that would depend on how much it would fall into the category of cases recognizing Greenberg, where you could have a constitutional challenge. That would ---- it sounds like a de facto policy of treating Muslims or some disfavored class differently. That's not what we have here. You don't have an allegation of that. I don't think we do have an allegation of that. Again, this is the ---- this is a very limited challenge. He basically, as the ---- as the Court was observing earlier, he basically came to the ARC saying, I admitted to this misconduct. The ARC affirmed the revocation of his security clearance. I wanted to start with this quote on the ground that, quote, his admitted misconduct in accessing sensitive information for personal reasons raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons. That's the stated rationale by the trained adjudicators on security clearance determinations. In other words, I just need to be clear on this. This Court, in your view, is bound to read the ARC's opinion as relying solely on his admission and, as Judge Tatel characterized it, throwing himself on the mercy of those hearing his case and that in no way was the ARC influenced in looking at the nature of his confession and the implications that it might have for his being investigated? What I'm ---- what we are saying is that ---- In other words, what I'm trying to get across, it's one thing suppose in a hypothetical I mistakenly did this. I'll never do it again. And he's from a farm in Iowa and the FBI has no information about any family member or any acquaintance that would in any way adversely affect national security. That's what I'm trying to understand about this case. It may be all about him, but to the extent the Court has said that there can be these procedural due process challenges, what is the role of the Court? Well, again, the ---- I think that the basic thrust of our argument is that you can't second-guess the stated reasons given by the trained adjudicators who are making the security clearance. The stated reason here ---- That's the way the brief is written. Can you bring to court a claim not as to the ultimate decision, but the process by which the decision was made in the sense you had a hearing, but it was unfair for the following two reasons? Well, so I guess our response to that is that type of due process claim, distinct from a claim challenging a general policy governing security clearance procedures, which is the Greenberg sort of situation, that type of due process claim that you're positing is inextricably tied up with the merits. And if I could just point to, like, the different due process claims that he alleges in this case, the first one is that the agency missed the ARC, misapplied the adjudicative guidelines. And basically, the argument there is that the agency couldn't rely on these foreign influence concerns. There's two responses to that, a bunch of responses to that. One is that they didn't. There's nothing on the face of the ARC's decision that suggests that it did rely on foreign influence concerns. Secondarily, when you're talking ---- there's nothing on the face of the applicable regulation, 32 CFR 147.4, that says you can't rely on foreign influence concerns just because someone is a, you know, natural-born U.S. citizen. There's lots of concerns that can play in to, you know, having serious doubts about someone's ability to have access to classified information. Kennedy, during the Cold War, there was often someone was denied a security clearance because they came from a country covered under Soviet ---- under the Warsaw Pact, and they had family there and could be subject to blackmail, even though there was ---- you were absolutely innocent. You could be denied a security clearance in that situation. Right. I mean, I think the question goes to there's lots of things that can play in to security concerns. And, Judge Rogers, going back to your question, that type of due process claim, you misapply the adjudicative guidelines. That's inextricably tied with the merits, the judgments about what evidence is necessary ---- Sotomayor, your view is that would be precluded by Egan. Yes, Your Honor. Biological conclusion is what Egan means. And I think it's to expound on that. I think that this Court's decision in Rattigan, surprisingly, is helpful for us on this in the sense that it ---- Well, that's the first time I've ever heard the government say something like that. That's very reassuring to me. Thank you. I've been waiting for the opportunity to say that to this particular group of judges. But in the sense that you recognize in Rattigan that it's important for the trained adjudicators there to have full access to even doubtful information. And you drew a line there as to knowing falsity and carved that out. But that ---- Well, the response that he had, quote, a fair hearing, is irrelevant. And I don't see the government taking that position. And that's why I'm trying to understand what this Court's role might be in looking at a procedural due process argument. He had a hearing, but he came and sort of was blindsided. And so he didn't have the opportunity either to prepare a full defense, much less to present it. So let me try to be very clear, is that we're ---- in Section 1 of our brief, we're arguing that Egan precludes all the claims, including the due process claims, and especially the misapplication of the adjudicative guidelines, because ultimately they go to the merits and the process and all that stuff that Egan bars, that's heartland Egan material. Secondarily, we have a section that, you know, goes off on the ---- some of the grounds that the district court ruled on, because the district court admittedly did not rule for us on Egan across the board. It ruled on a variety of due process grounds. So it's an argument in the alternative. We do think that this Court, we would prefer a decision that stops with Section 1 of our brief and says Egan bars the claims. But we do, as the government often does, argue in the alternative that there was no denial. Ginsburg. I thought some of your answers as to a practice or a policy, and you acknowledge our precedent, wouldn't allow you to take that position. Well ---- Ginsburg. Indeed, your brief says it's an open question in this circuit. Well, what we're acknowledging, just to be very clear, is we're not quarreling with Greenberg. We're not quarreling with cases that say you can have a constitutional challenge to a policy, a regulation, that sort of thing that, you know, deals with security clearance decisions. We're not saying in a broad-brush way security clearance, security determinations are completely off limits. What we are suggesting is that when you, as the plaintiff here is, and you're coming in, and you're second-guessing an individual adjudication that, you know, and again, we've had a lot of process at pretty high levels, and you're saying that they, things like, you know, as a due process claim, they misapply the adjudicative guidelines, or they must have relied on some secret FISA evidence that nowhere appears on the face of the ARC's decision. You're doing ---- What's your best response, then, to why it asks, the ARC asks for an OLC, OLC opinion? I can't speculate on that, Your Honor. I mean, again, I think the best response is that at the end of the day, there was no FISA evidence considered. There's no indication on the face of the ARC's decision that there was any FISA evidence that said ---- Robertson, didn't the district court actually find that, as a matter of fact? I'm sorry? The district court actually made a finding on that, right? The district court found that there was that they didn't rely on any evidence from the FISA warrant, right? That's right. And I was just going more directly to the actual face of the decision. Yeah. Because I think it's important that in the Egan world, you can't sort of assess for pretext the stated reasons given by the trained adjudicators for revoking or affirming the revocation of a security clearance. I mean, that's basically, that's core Ryan. You know, it's basically in the McDonnell-Douglas context. You said that, you know, figuring out whether a stated reason is pretextual would run smack up against Egan. And the same principle applies even if you are dealing with something that's configured as a constitutional claim, whether equal protection or due process. So there is no procedural due process protection in an Egan context. Is that your position? The position ‑‑I think it's slightly more limited. I think it's slightly more limited, Your Honor. I think it's when the due process claim challenges essentially the process by which the agency, you know, undertakes to review the security clearance revocation, the evidence it considers, those sorts of inputs. Again, Rattigan is helpful in this. That is something that courts shouldn't be looking behind under Egan. So there's no way to look at what the subject's opportunity to defend is under Egan? I don't think so in the security clearance revocation, in a specific individualized decision. As is the evidence, we don't really care what the employee may say in defense. I think the upshot of Egan, yes, is that you can't ‑‑ a court cannot look behind that second guess, the rationale given by the trained security clearance adjudicators. I take ‑‑ I get that. I take your point about take this case. We have the ARC decision. We look at that, right? And we don't look beyond it. But suppose there had been ‑‑ suppose he had made an argument before the ARC that the FBI treats Muslims and non-Muslims differently for this kind of offense, and it just didn't appear in the ‑‑ in other words, the ARC didn't account for it. We could ‑‑ that would be a different case, right? In other words, if the ARC simply ignored that argument. I'm not sure ‑‑ The argument that ‑‑ I'm not sure, Your Honor. Really? Because, again, looking behind the face of the ARC's decision, I think there is a considerable Egan problem. Suppose he had actually filed a brief before the ARC with data which showed that they're treated differently, and the ARC ignored it. That's not this case. I agree with you. It's totally not this case. I'm avoiding saying that. What? I'm avoiding saying that. That is not this case. Right. But I'm reluctant to agree. But I'm asking you a hypothetical. I know. Wouldn't it be different if he had made that argument? I ‑‑ They wouldn't be looking beyond the ARC opinion. We would just have evidence that the ARC ignored probative evidence. I think that you ‑‑ in some respects, you would. You would be saying that the ARC's stated grounds for its decision, in other words, like here the stated grounds were that, look, the admitted misconduct was sufficient. That was ‑‑ Wouldn't we ‑‑ That alone was enough. Wouldn't we insist on the ARC at least explaining why that evidence was not relevant? Well, again, that's sort of my point, is that if the ARC didn't explain, if that argument had been posed to the ARC, which it was not here, if it had, and the ARC ignored it for whatever reason, the Court would be in the position of second-guessing the ARC and essentially finding that the stated reasons given by the ARC, that the admitted misconduct was by itself enough. In other words, you could have inputs, and the ARC could essentially self-regulate and say, we don't need any of those inputs. So you're ‑‑ the government's position, then, is it doesn't make any difference. I mean, I was asking Mr. Gill carefully to find out whether he had made this argument before the ARC. And your point is interesting. I hadn't thought about it this way. Your point is that doesn't make any difference in the Egan situation, right? To the extent that we ‑‑ That what we have to do, we look at the ARC thing, and we just ‑‑ and I'm not saying this is wrong. I just want to make sure I understand the government's position, that the ARC opinion is ‑‑ is it, and that's it. And if there's ‑‑ if there's evidence, if he made an argument about discrimination, then we just have to assume that the fact that the ARC didn't mention it means that the ARC thought it wasn't relevant. End of case, right? I think that's right, Your Honor. And the reason why is that, again, the ARC gave reasons. In this case, the ARC said the admitted misconduct was a sufficient basis by itself to support the revocation of the security codes. Of course, you don't have to ‑‑ we don't have to accept that for you to win this case, right? We ‑‑ I take it, you know, you could also win on the basis of the fact that he just didn't make the argument, right? We could win it on that grounds as well. That's interesting. He said he filed a memorandum. Yeah. All right. Do you know anything about that? I do not know anything about that. And, again, it's not in the record. I do know that it's not in the record. The record is very sparse in this case. It's not in the record that we have, but it may be in the record that the ARC had. It's possible. It's all going to turn on whether ‑‑ that's why I'm trying to press you on this point. But his point is it doesn't make any difference. That is my point, yes. The point is that it doesn't matter what the defendant may say. That's right. And, I mean, the extent to which the Court would have to go sort of rummaging around in the security clearance process, I mean, the sort of process that led up to, you know, the ARC's decision. But you're arguing basically that Egan, his confession, the ARC decision, he doesn't even have a right to a hearing. Well, he got a hearing, but my point is simple. But his argument is he got a hearing with his arms tied behind his back, so he couldn't present the evidence that he would have presented had he been aware that the government was going to present certain evidence. My point is simple. I just need to ‑‑ Egan actually ‑‑ I'm pressing you because, and I don't want to go back to the 50s and, you know, have that sort of argument, but the government has at least in its cases, and we seem to have assumed that there is some opportunity for a fair hearing in the security clearance revocation process. And we haven't identified how deeply we can delve into that. But the questions you've heard is that if there was, you know, a clear proffer of a policy, et cetera, that there would be some process to address that. But now I think you're telling us there is no process to address that. And I think that's sort of ‑‑ Suppose the denial of security clearance had been done by the FBI without any hearing at all. Based on an informal adjudication. You know, on administrative law, informal adjudication, just the supervisor or somebody who's in charge of security clearance who said, gee, this is a problem with this guy, let's deny his security clearance. Your view is, under Egan, that is not reviewable. That's correct, Your Honor. And there's a lot ‑‑ It's irrelevant whether you had an internal procedure or not. That's correct, Your Honor. Because most security clearances are denied without regard to a process at all. Well, there certainly are more ‑‑ There are more summary procedures, and often the challenges, you know, they often arise in the Title VII context. The challenges arise, and it's just all you have is a denial and, you know, the government's post hoc explanation for the denial. And the courts are uniformly, they hold that you cannot have review of that process or the investigative steps leading up to that process. There are legions of case holding ‑‑ cases holding that. I think that's right. So in this case, actually, we have more procedure than you typically have in a denial of security clearance. And, yes, Your Honor, I agree with that completely. And we may have gotten into trouble by talking about the additional procedure because it may, in some respects, suggest that the court should evaluate that. But that's why I try to make clear that Section 2 of our brief is an argument in the alternative. Section 1 is where we think the court should rest, is on the Egan grounds with respect to all of the claims. But speaking of that, what the ‑‑ Gila relies very heavily on Webster. What do you ‑‑ how do you distinguish Webster? I can't hear. Webster. Webster. Oh, Webster.  What do you do about Webster? The court said that the decision ‑‑ the decision there, that was an employment decision, CIA's decision, quote, though sensitive and discretionary, could be reviewed for constitutional error. And that's a post-Egan case. That's right, Your Honor. So how do you ‑‑ It was decided the same year as Egan. I'm not sure I can do any better than Judge Kaczynski in the Dorfman case. Sorry, what? I'm not sure I can do any better than Judge Kaczynski in the Dorfman case where he talks about ‑‑ Okay. Just remind me. What did Judge Kaczynski say in the Dorfman case? He talked about Webster and talked about how that it did not present that the issue there was whether the NSA statute foreclosed judicial review of a constitutional claim being brought there. And so that presented a different issue. Well, that's true. I thought Kaczynski's point was the issue hasn't been resolved yet. Yes. Precisely. The court did ‑‑ Another distinction. Yeah. The court did say that. And another distinction, Webster, the plaintiff was fired. It wasn't just a denial of a security clearance. That's correct, Your Honor. There's a lot of distinctions. And the point here is that when you're talking about sort of the dueling, you know, the executive branch's authority over classified material given by the Constitution, that's a different question. The Haggab case in the Fourth Circuit illustrates another court struggling. But you don't just say in your brief, and I realize, you know, the last-minute substitution, et cetera. Sure. You acknowledge that this Court has never directly addressed the issue that Judge Kaczynski was identifying. That's correct, Your Honor. So to accept your first argument, we would have to decide that question, wouldn't we? Well, there's a lot of ways you could go about that. I mean, again ‑‑ No, but you're saying these are alternative arguments. So you want us to cite Egan and just forget about everything else. But your own brief acknowledges that we would have this issue before us. Well, certainly when ‑‑ I thought the alternative argument was to give us a way to avoid that very difficult question and to move on to these other points. I think that is an alternative available to this Court, especially under the decision in Orsak, which makes clear that Egan is not a jurisdictional, you know, decision, so you could reach the alternate grounds here. I guess what I was trying to suggest is that both Dorfmant and also the Fourth Circuit more recently ‑‑ The problem with the alternative grounds, and this is where it's troubling me, does that really implicitly get into the merits of the question? Is that inconsistent with Egan, your reading of Egan? Your view, if I understand it, and putting together Egan and Webster V. Doe, keeping in mind, I think, McElroy, would be if there was a statement, a flat statement, that you're denied security clearance because you're a Catholic or because you're a Muslim, that would be challengeable, because that would be reflecting a cross‑the‑board policy that you could challenge. It wouldn't be an internal, it wouldn't be specific to just one individual. But a denial of security clearance based on a judgment about an individual is not reviewable. I think that's a fair summation. And in the statement, which I gave at the beginning, a statement you're denied security clearance because you are a Muslim or because you are a Catholic, that would be an equal protection violation, not a due process problem. That's correct, Your Honor. I think that's right. And my point, where I tried to start this argument is, again, that the ARC gave a reason. It said the admitted misconduct was enough to sustain the revocation of the security clearance. That being the case, any review of the inputs that came into that, the process, the evidence that the ARC may or may not have considered, all of that process, this Court has reiterated, albeit in the Title context, Title VII context, Judge Rogers, that that is something that Egan shields from judicial review. The same principle applies equally to constitutional claims. Just because you can reconfigure, you know, what would otherwise be a Title VII claim as an equal protection claim doesn't mean that Egan principles cease to be relevant here and preclude the review. All right. Thank you very much. Thank you, Your Honor. Counsel for appellant. Thank you, Your Honor. Your Honor, the ARC, the ARC simply did not just state that it was the admitted misconduct. The ARC also went to the ARC. ARC what? It's very hard to hear. Sorry, Your Honor. The ARC what? Your Honor, the ARC just simply did not state that it was the admitted misconduct. The ARC also stated that it was a foreign influence. No, here's what the ARC said. Sorry, Your Honor. The comment, well, I shouldn't say no. I'm just looking at my notes on this. The comment about, about, the comment about Gil's ties to his foreign-born relatives, that's, the ARC describes that as the FBI's concern, right? It says the FBI is concerned that he, that he accesses information, quote, quote, because of his ties to his foreign-born relatives. That's the FBI's concern. Then the ARC goes on and decides the case, and it decides the case solely on the grounds of his admitted misconduct. The ARC, Your Honor, also stated that they believed that Special Agent Gil was remorseful, but they could not overlook his foreign-born relatives, which is what we have brought forth, that that is a misapplication of the adjudicative process. There is no foreign influence here. The adjudicative process— That gets into the reviewing the merits of this issue, right? Well, if there is going to be an adjudicative standard, Your Honor, we believe it should be applied. There is no— That sounds like you're sort of relying on the Administrative Procedure Act and saying this is arbitrary and capricious. No, Your Honor. We're basically stating that the ARC looked and examined the fact that he was a Muslim. We're basically trying to present evidence of that. Foreign influence, there is no—that factor should not even have been considered because there is no foreign influence. All the relatives that we're talking about are all U.S. citizens. Foreign influence, and if you look at the adjudicative standard, exactly refers to that. Foreign people in other countries who, as, you know, Justice Silberman, you pointed out in the Cold War, you know, Russian relatives who could be susceptible to blackmail. That was not the standard here. The standard here—that was not the facts here. The facts here were they were all U.S. citizens who happened to be born in another country. We do not believe that the ARC or the FBI could have considered that. That is not an appropriate adjudicative factor. That is what we're stating. That is one of the things that we were stating. The other thing that I want to point out is this is at the motion to dismiss State. At this State, all the facts must be construed in light most favorable to the appellant. We have made the claim that the FBI is treating, or in this case, treated Muslims differently. In our complaint, it clearly states that the FBI did this action because Special Agent Gill is Muslim and also because of national origin. Sotomayor, but you see, that's different from whether or not that argument was made before the ARC. Your Honor, the argument was made before the ARC. We, as said, we did not attach the arguments. But, again, I do not ---- But you, you, you, but there's nothing in the record before us to demonstrate that, right? There is not, Your Honor. We did not attach. But, however, I do believe that because we are at the motion to dismiss phase, that that fact must be construed in light ---- Let me ask a question. What I asked of government counsel, in most cases in which there's a denial of security clearance, you don't have any procedure, formal procedure at all. It's just an informal adjudication, which is an administrative law term, for just an administrative decision. And then, yes, Your Honor, you ---- To your theory that any determination of a denial of security clearance must, as a matter of constitutional due process, be accompanied by a hearing of some sort? Your Honor, if there are constitutional rights at State, yes, there is. The ARC procedure exists to give an appellate procedure if you are ---- I understand about the ARC procedure, but it doesn't apply to all agencies and all departments of government, does it? Not the ARC. It applies to the Department of Justice. But every other agency does have some form of appellate review for revocation of a decision. So for revocation of security ---- Not for denial of security clearances. Not for denial, Your Honor, no. Although the theory of your theory would be just as relevant for denial of a security clearance as a revocation. I do believe there is a difference, Your Honor. But the problem there is you're running afoul of Egan. Again, Your Honor, in ---- In other words, I think we're diverted to talk about procedure here when procedure wasn't ---- isn't really constitutionally necessary under Egan, any procedure. Your Honor, even if you're ---- even if that argument is correct, the issue comes down to if we can ---- if an appellant can identify a liberty interest, if he can identify a constitutional issue at stake, the court can review it. This circuit has held that over and over again. And again, I point the Court to Kartseva. That is the case that I believe is most inalguable because you do have one Russian translator working in the Department of State whose security clearance was revoked because there was some information that was not cleared up. The Court in this, this Court, this circuit held that she did have a liberty interest. This Court remanded the case back to the district court because it stated that at this stage we do not know what the impact of that revocation will be, how it stigmatized her. We would like to have more ---- We talked about, we mentioned a liberty interest, although I think it's an equal protection interest, but those terms get mixed up anyway. Yes, Your Honor. Your Honor, the best quote that I can point this Court to as they're saying, what is, as the judges have asked, what is the role of this Court in security clearance, is what this circuit stated in National Federation in Greenberg. All questions of government are ultimately questions of ends and means. The end may be legitimate. Its accomplishment may be entrusted solely to the President. Yet the judiciary still may properly scrutinize the manner in which the objective is to be achieved. That is what we're asking the Court here to do. ARC did hold a proceeding, but not informing, since foreign influence was clearly at play here, not informing the appellant that there is a FISA warrant out there on his family member and what the implication of that is going to be is significant. And the best evidence to prove that is the fact that the chair of the ARC requested an opinion from OLC on that, and it took six years from the time the ARC was held to issue a judgment on that. We believe that if this case is allowed to continue beyond the motion to dismiss phase, that we will have evidence that will be, through discovery, which shows that Special Agent Gill was treated differently, Muslims are treated differently, than other agents in similar actions. All right. Can I ask a question of Government's counsel? All right. Thank you. May I just ask one question? Well, could we hear from Government counsel first? I just want to ask one question. Is that correct that every agency dealing with national security provides a hearing on a question of whether a revocation of security clearance was appropriate or not? I'm just not — I can't answer for across the government. I think that — I think the answer is no. I think the answer is no, but again, without the confidence to be able to say that, I hesitate to do that. All right. We have nothing in the record here. I think that's right. All right. Thank you. All right. Yes, we will take the case under advisement.
judges: Rogers, Tatel, Silberman